UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EVANSTON INSURANCE COMPANY,
an Illinois Corporation,

    Plaintiff,
v.                       Case No.:  8:11-cv-2630-T-33TGW

PREMIUM ASSIGNMENT CORPORATION,
a Florida Corporation,

    Defendant.
_____/

**ORDER**

This cause is before the Court pursuant to Defendant's Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c), filed on May 25, 2012. (Doc. # 36). On June 8, 2012, Plaintiff filed a response in opposition to the Motion. (Doc. # 39). For the reasons that follow, the Motion is denied.

**I.**    **Factual Background and Procedural History**

The following factual discussion, taken from Plaintiff's Complaint, is accepted as true for the purpose of addressing the Motion. Plaintiff Evanston Insurance Company issued a Physicians, Surgeons and Dentists Professional Liability Insurance Policy, No. MM-805312, to Naresh B. Dave, M.D. and N.B. Dave, M.D., P.A. (collectively the "Policy") for the Policy period August 10, 2002, to February 5, 2003. Id. at ¶¶ 6, 20. The six-month insurance premium on the Policy was

$36,153.70.  Id. at ¶ 7.

Defendant Premium Assignment Corporation entered into a Premium Finance Agreement (the "Agreement") with Dr. Dave on August 10, 2002.  Id. at ¶ 7.  Under the Agreement, Premium Assignment paid 75% of the Policy insurance premium, and Dr. Dave paid the remaining 25%.  Id.  In exchange, Dr. Dave was obligated to make nine monthly payments to Premium Assignment. Id.

To protect Premium Assignment's interest, the Agreement identified Premium Assignment as Dr. Dave's "attorney in fact" for the Policy.  Id. at ¶ 8.  As attorney in fact, Premium Assignment had the power to cancel the Policy for nonpayment of insurance premium.  Id.

On January 5, 2003, Dr. Dave died.  Id. at ¶ 9.  The Estate of Dr. Dave and the Estate of N.B. Dave, M.D., P.A. (collectively the "Estate") are currently being probated in the Circuit Court in and for Hillsborough County, Florida. Id. at ¶ 10.

On January 10, 2003, the Estate failed to remit Dr. Dave's premium payment of $3,134.68 to Premium Assignment. Id. at ¶ 11.  On or about January 15, 2003, Premium Assignment mailed a Notice of Intent to Cancel the Policy to both the

2

Estate and to the McArthur Insurance Agency. Id. at ¶ 12.[1] On January 20, 2003, the Estate contacted McArthur and indicated that the Estate received the Notice of Intent to Cancel the Policy and wanted the Policy cancelled. Id. at ¶ 15.

On January 21, 2003, attorneys for Kenneth and Norma Jean DeLorey sent a letter to Dr. Dave's former office. Id. at ¶ 14. The letter stated, "my law firm has been retained to investigate a potential claim of medical negligence arising out of the medical care and treatment of Kenneth DeLorey [by Dr. Dave.]" Id. The personal representatives of the Estate allegedly reviewed the letter, but never informed Evanston of the letter's existence. Id.

On January 30, 2003, Premium Assignment faxed a Pending Cancellation Report to McArthur. Id. at ¶ 19. On February 4, 2003, Premium Assignment issued a Notice of Cancellation to Dr. Dave's office, to McArthur, and to Evanston stating:

> You are hereby notified that the policy described above is **cancelled for non-payment of an installment** in accordance with the conditions and terms of the [Agreement,] which incorporates a power of attorney. This **cancellations is effective**

---

[1] Although it is not stated within the record, it is inferred that McArthur Insurance Agency was the insurance broker between Evanston and Dr. Dave for the Policy.

3

> **one day after the above captioned date**, at the hour indicated in the policy as the effective time.

Id. at ¶ 20. (Emphasis added).

On February 10, 2003, McArthur conveyed to Evanston that the Estate wanted the Policy's date of cancellation to reflect January 5, 2003, the date of Dr. Dave's death. Id. at ¶ 21. Evanston accordingly cancelled the Policy and reflected a cancellation date of January 5, 2003.

On February 27, 2003, Evanston received the DeLoreys' "Notice of Intent to Initiate a Claim for Medical Malpractice" against Dr. Dave. Id. at ¶ 23. On July 25, 2003, Evanston informed the Estate that the Policy had been cancelled before the DeLoreys' claim was filed and that Evanston would not undertake the defense of the claim. Id. at ¶ 24.

On September 5, 2003, the DeLoreys filed a complaint for medical negligence in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. Id. at ¶ 25. Ultimately, the DeLoreys and the Estate agreed to settle the case for $2,400,000.00 on the condition that the Estate assign to the DeLoreys any rights the Estate might have against Evanston. Id. at ¶ 29.

On August 6, 2004, the Estate signed a document titled "Settlement Agreement, Stipulation for Entry of Judgment."

4

Id. at ¶¶ 30-31.  The Stipulation stated in pertinent part that "Evanston has wrongfully withdrawn from the defense and denied coverage to the Estate."  Id.

On September 2, 2005, the DeLoreys filed an amended complaint in state court against Evanston alleging that Evanston breached its insurance contract with the Estate and committed bad faith by not defending and indemnifying the Estate against the DeLoreys' claims.  Id.  Evanston filed a third-party complaint against Premium Assignment for indemnity of the DeLoreys' claims (Count I), equitable subrogation (Count II) and equitable contribution (Count III).  Id. at ¶ 41.

As affirmative defenses, Premium Assignment asserted that Evanston failed to investigate Premium Assignment's cancellation notice, especially when the notice did not include Dr. Dave's P.A.[2]  Id.  Additionally, Premium Assignment asserted that Evanston did not rely on Premium Assignment's cancellation notice when Evanston disregarded Fla. Stat. § 627.848 by selecting Dr. Dave's date of death as

---

[2] The Policy, originally written by Evanston, included two separate entities: Naresh B. Dave, M.D. and N.B. Dave, M.D., P.A.  When Premium Assignment issued its notice of cancellation, the notice did not identify N.B. Dave, M.D., P.A.  The DeLoreys' complaint included both N.B. Dave, M.D. and N.B. Dave, M.D., P.A. as defendants.

5

the Policy's cancellation date.³  Id.  Premium Assignment likewise asserted that Evanston knew Dr. Dave was dead when it received the Cancellation Notice from Premium Assignment and backdated the endorsement following notice of a claim against the Policy.

According to Evanston, the possibility that Premium Assignment's Notice of cancellation did not, in fact, cancel the Policy raised the specter of a significant recovery by the DeLoreys.⁴  Id. at ¶ 51.  Therefore, Evanston invited Premium Assignment to participate in settlement discussions with the DeLoreys.  Premium Assignment chose not to participate. Id. at ¶¶ 54-59.  Ultimately, Evanston settled with the DeLoreys for $500,000.00. Id. at ¶¶ 60-61.

On November 22, 2011, Evanston filed the instant Complaint against Premium Assignment for indemnity, equitable subrogation and equitable contribution.  (Doc. # 1). Premium Assignment filed its Answer and Affirmative Defenses.  (Doc. # 33).  The pleadings are currently closed.  Id.

---

³ Fla. Stat. § 627.848 addresses the cancellation of an insurance contract upon default.

⁴ Evanston speculated that the court could find that Premium Assignment's Notice of Cancellation was defective on the bases that: (1) Premium Assignment's power of attorney had expired on the date of Dr. Dave's death; and (2) proper notice was not sent to Dr. Dave's P.A.

Premium Assignment seeks Judgment on the Pleadings pursuant to Rule 12(c), asserting that "each cause of action alleged by Evanston is premised upon allegations that Premium Assignment wrongfully cancelled [the Policy,] and that Evanston relied upon the validity of the cancellation [to Evanston's detriment.]" (Doc. # 36 at ¶ 8). Premium Assignment further contends that, because the "issue of whether Premium Assignment committed any wrongdoing has been decided in favor of Premium Assignment by a Florida state court in Case No. 05-4373," Evanston's claims are now collaterally estopped. Id.

Premium Assignment filed two supporting documents as attachments to the Motion for Judgment on the Pleadings. The first attachment is the amended complaint brought by the DeLoreys in Florida state court (case no. 05-4373) concerning Evanston's alleged breach of contract and bad faith. (Exhibit A, Doc. # 36-1). The second attachment is the state court's four-page partial summary judgment order relating to case no. 05-4373 (Exhibit B, Doc. # 36-1).

## II. Legal Standard

A motion for judgment on the pleadings may be granted "when material facts are not in dispute and judgment can be rendered by looking at the substance of the pleadings and any

7

judicially noticed facts." <u>Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n</u>, 137 F.3d 1293, 1295 (11th Cir. 1998)(citations omitted).

A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss. <u>Szabo v. Fed. Ins. Co.</u>, No. 8:10-cv-02167-T-33, 2011 WL 3875421 (M.D. Fla. Aug. 31, 2011)(citing <u>Hawthorne v. Mac Adjustment, Inc.</u>, 140 F.3d 1367, 1370 (11th Cir. 1998)). As with a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations omitted).

Rule 12(d) instructs that when matters outside of the pleadings are presented to the court on a motion for judgment on the pleadings, the motion must be treated as one for summary judgment. <u>See</u> Fed. R. Civ. P. 12(d). However, the motion "should only be treated as one for summary judgment if the record is fully developed and the non-moving party was given adequate notice of the court's decision." <u>Jozwiak v.

Stryker Corp., No. 6:09-cv-1985-Orl-19GJK, 2010 WL 743834, at *4 (M.D. Fla. Feb. 26, 2010)(citations omitted).

"The court has a broad discretion when deciding whether to treat a motion [for judgment on the pleadings] as a motion for summary judgment even though supplementary materials are filed by the parties and the court is not required to take cognizance of them." In re Jet 1 Ctr., Inc., 319 B.R. 11, 16 (Bankr. M.D. Fla. 2004) (citations omitted); Hagerman v. Cobb County, Ga., No. 1:06-CV-02246-JEC, 2008 WL 839803, at *3 (N.D. Ga. Mar. 28, 2008); see also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1371, at 273 (3d ed. 2004) ("It is within the district court's discretion whether to accept extra-pleading matter on a motion for judgment on the pleadings and treat it as one for summary judgment or to reject it and maintain the character of the motion as one under Rule 12(c).")

## III. **Analysis**

Premium Assignment contends in its Rule 12(c) Motion that Evanston's third-party claim has been fully litigated in a Florida state court and is, thus, precluded under the

doctrine of collateral estoppel. (Doc. # 36 at 5).[5] Premium Assignment seeks judicial notice of the state court's order.

Rule 201(c)(2) of the Federal Rules of Evidence states: "The court must take judicial notice if a party requests it and the court is supplied with the necessary information." However, a court in one case will not take judicial notice of the record in another case, even between the same parties, unless the prior proceedings are introduced into evidence. See Concordia v. Bendekovic, 693 F.2d 1073, 1076 (11th Cir. 1982) (citations omitted).

In United States v. Jones, the Eleventh Circuit opined that while a court may take judicial notice of a document filed in another court, it cannot do so "for the truth of the matters asserted." 29 F.3d 1549, 1553 (11th Cir. 1994) (citations omitted). Rather, the Court's judicial notice may be "for the limited purpose of recognizing . . . the subject matter of the litigation." Id. Therefore, the Court does not take judicial notice of accuracy of the factual allegations advanced in that litigation or the accuracy of the state

---

[5] The Court specifically notes that Premium Assignment did not provide the Court with a copy of the state court's transcript identifying the substance of the issues litigated during the March 9, 2011, state court hearing, or any other pertinent orders from the underlying state court action.

court's ruling.[6] See Moore v. Potter, 3:04-cv-1057-J-32HTS, 2006 WL 2092277, at *14 (M.D. Fla. July 26, 2006)(citing Young v. City of Augusta, Ga., 59 F.3d 1160, 1167 (11th Cir. 1995))(an order may be accepted for the limited purpose of recognizing the judicial act taken, or the subject matter of the litigation and issues decided, as opposed to adopting the findings of fact made therein).

In the Motion, Premium Agreement asserts that the scope of the this litigation is confined to the narrowly defined issue of Policy cancellation and the state court ruled in an order dated March 16, 2011, that the Policy was cancelled on February 5, 2003. (Doc. # 36-2 at 3). However, according to Evanston, its claims are premised on: (1) the cancellation of

---

[6] As stated in Jones, 29 F.3d at 1553:

> In order for a fact to be judicially noticed under Rule 201, indisputability is a prerequisite. Since the effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and in effect, directing a verdict against him as to the fact noticed, the fact must be one that only an unreasonable person would insist on disputing. Id. If it were permissible for a court to take judicial notice of a fact merely because it has been found to be true in some other action, the doctrine of collateral estoppel would be superfluous. Id. Moreover, to deprive a party of the right to go to the jury with his evidence where the fact was not indisputable would violate the constitutional guarantee of trial by jury.

the Policy; (2) the positions taken by Premium Assignment in the underlying state court action; (3) Premium Assignment's refusal to participate in the underlying state court action; (4) Premium Assignment's refusal to participate in various settlement negotiations; and (5) Premium Assignment's refusal to accept the defense in the underlying action.

Upon due consideration, the Court denies the Motion for Judgment on the Pleadings. The Court is unable to decide this factually complex matter through the myopic lens of a Rule 12(c) motion. This is especially so when the arguments are based on documents external to the pleadings--here the state court's March 16, 2011, order. Premium Assignment seeks a judgment in its favor based on such state court order; however, Premium Assignment has supplied this Court with only the four-page state court order and no other record documents. (Doc. # 36-2).[7] The Court has no transcript and does not know if this order was followed by other orders which finally adjudicated all claims.

Furthermore, due to the deficiency of the record, the Court declines to convert this Motion into a motion for

---

[7] Interestingly, the state court order in question grants Evanston's partial motion for summary judgment and denies Premium Assignment's partial motion for summary judgment.

summary judgment. With an approaching summary judgment deadline of July 27, 2012, the Court prefers that the parties fully brief the issues and submit relevant exhibits for the Court's consideration. Particularly, any party arguing that this action is foreclosed based on state court findings should supply the Court with a complete record of what transpired in the state court and adequately explain why any state court ruling is dispositive of the present matter. Simply providing the Court with a non-final four-page state court Order without a transcript will not suffice. Therefore, Premium Assignment's Motion for Judgment on the Pleadings is denied.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant's Motion for Judgment on the Pleadings (Doc. # 36) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>3rd</u> day of July, 2012.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record