UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EVANSTON INSURANCE COMPANY,
an Illinois Corporation,

       Plaintiff,

v.                      Case No.:  8:11-cv-2630-T-33TGW

PREMIUM ASSIGNMENT CORPORATION,
a Florida Corporation,

       Defendant.
_____/

**ORDER**

This cause is before the Court pursuant to Plaintiff Evanston Insurance Company's Dispositive Motion for Summary Judgment as to Count I and Count II (Doc. # 43), filed on July 27, 2012. Defendant Premium Assignment Corporation filed a Response in Opposition (Doc. # 48) on August 10, 2012. Evanston filed a Reply (Doc. # 51), with leave of this Court, on August 15, 2012.

Also before this Court is Premium Assignment's Dispositive Motion for Summary Judgment (Doc. # 42), filed on July 27, 2012. Evanston filed its Response in Opposition (Doc. # 47) on August 10, 2012, and Premium Assignment filed a Reply (Doc. # 54), with leave of Court, on August 21, 2012.

For the reasons that follow, the Court denies Evanston's Motion. The Court grants Premium Assignment's Motion in part and denies it in part.

I.     **Factual Background and Procedural History**

Evanston issued a Physicians, Surgeons and Dentists Professional Liability Insurance Policy, No. MM-805312, to Naresh B. Dave, M.D. and N.B. Dave, M.D., P.A. (the "Policy") for the Policy period August 10, 2002, to February 5, 2003. (Doc. # 1 at ¶¶ 6, 20). The six-month premium on the Policy was $36,153.70. (Id. at ¶ 7).

Premium Assignment entered into a Premium Finance Agreement (the "Agreement") with Dr. Dave on August 10, 2002. (Id. at ¶ 7). Under the Agreement, Premium Assignment paid 75% of the Policy premium and Dr. Dave paid the remaining 25%. (Id.). Dr. Dave was further obligated to make nine monthly payments to Premium Assignment. (Id.).

To protect Premium Assignment's interest, the Agreement identified Premium Assignment as Dr. Dave's "attorney in fact" for the Policy. (Id. at ¶ 8). As attorney in fact, Premium Assignment had the power to cancel the Policy for nonpayment under the Agreement. (Id.).

On January 5, 2003, Dr. Dave died. (Id. at ¶ 9). The Estate of Dr. Dave and the Estate of N.B. Dave, M.D., P.A. (collectively the "Estate") failed to remit to Premium Assignment Dr. Dave's payment of $3,134.68 due on January 10,

2003. (Id. at ¶ 11). On or about January 15, 2003, Premium Assignment mailed a Notice of Intent to Cancel the Policy to both the Estate and to the McArthur Insurance Agency, Dr. Dave's insurance agent. (Id. at ¶ 12).

On January 20, 2003, personal representatives of the Estate contacted McArthur and indicated that the Estate received Premium Assignment's Notice and wanted the Policy canceled. (Id. at ¶ 15). McArthur urged the representatives to continue the Policy through its scheduled expiration, then purchase "tail coverage" to provide indemnity and defense for any claims made thereafter. (Id. at ¶ 16). The Estate representatives declined to do so and instead wanted a refund of the unearned premium under the Policy. (Id. at ¶ 18).

On January 21, 2003, an attorney for Kenneth and Norma Jean DeLorey sent a letter to Dr. Dave's former office. (Id. at ¶ 14). The letter stated, "my law firm has been retained to investigate a potential claim of medical negligence arising out of the medical care and treatment of Kenneth DeLorey [by Dr. Dave.]" (Id.). The personal representatives of the Estate allegedly reviewed the letter but never informed Evanston of the letter's existence. (Id.).

On January 30, 2003, Premium Assignment faxed a Pending Cancellation Report to McArthur. (Id. at ¶ 19). On February 4,

2003, Premium Assignment issued a Notice of Cancellation to Dr. Dave's office, to McArthur and to Evanston, cancelling the Policy for nonpayment effective the following day, February 5, 2013. (<u>Id.</u> at ¶ 20). On February 10, 2003, McArthur conveyed to Evanston that the Estate wanted the Policy canceled as of January 5, 2003, the date of Dr. Dave's death, in order to maximize the refund of the unearned premium. (<u>Id.</u> at ¶ 21). Evanston accordingly canceled the Policy and reflected a cancellation date of January 5, 2003. Evanston refunded $20,408.00 to Premium Assignment. (<u>Id.</u> at ¶ 22). Premium Assignment retained the amount Dr. Dave owed it, refunding $5,651.00 to the Estate. (<u>Id.</u>).

On February 27, 2003, Evanston received the DeLoreys' "Notice of Intent to Initiate a Claim for Medical Malpractice" against Dr. Dave. (<u>Id.</u> at ¶ 23). On July 25, 2003, Evanston informed the Estate that the Policy had been canceled before the DeLoreys' claim was filed and that Evanston would not undertake defense of the claim. (<u>Id.</u> at ¶ 24).

On September 5, 2003, the DeLoreys filed a complaint for medical negligence against the Estate in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. (<u>Id.</u> at ¶ 25). Ultimately, the DeLoreys and the Estate agreed to settle the case for $2,400,000.00 on the

condition that the Estate assign to the DeLoreys any rights the Estate might have against Evanston. (Id. at ¶ 29). On August 6, 2004, the Estate signed a document titled "Settlement Agreement, Stipulation for Entry of Judgment." (Id. at ¶¶ 30-31). The Stipulation stated in pertinent part that "Evanston has wrongfully withdrawn from the defense and denied coverage to the Estate." (Id.)

On September 2, 2005, the DeLoreys filed an amended complaint in state court against Evanston alleging that Evanston breached its insurance contract with the Estate and committed bad faith by not defending and indemnifying the Estate against the DeLoreys' claims. (Id.). Evanston filed a third-party complaint against Premium Assignment for indemnity, equitable subrogation and equitable contribution. (Id. at ¶ 41).

As affirmative defenses, Premium Assignment asserted that Evanston failed to investigate Premium Assignment's cancellation notice or perform any due diligence in regard to cancellation knowing that a claim had been made against Dr. Dave. (Doc. # 44-3 at 6). Additionally, Premium Assignment asserted that Evanston did not rely on Premium Assignment's cancellation notice because Evanston selected Dr. Dave's date of death as the Policy's cancellation date, and because the

Notice did not include Dr. Dave's P.A.[1] (Id.). Premium Assignment likewise asserted that Evanston knew Dr. Dave was dead when it received the Notice from Premium Assignment and backdated the endorsement after receiving notice of a claim against the Policy. (Id.).

According to Evanston, the DeLoreys' assertions that Premium Assignment's Notice did not, in fact, cancel the Policy because it was based upon an expired power of attorney and was not sent to the P.A. raised the specter of a significant recovery by the DeLoreys. (Doc. # 1 at ¶ 51). Evanston thus engaged in settlement negotiations with the DeLoreys and invited Premium Assignment to participate; Premium Assignment declined to do so. (Id. at ¶¶ 54-59). Ultimately, Evanston settled with the DeLoreys for $500,000.00 in April 2009. (Id. at ¶¶ 60-61).

The dispute between Evanston and Premium Assignment proceeded and, on March 9, 2011, Judge Richard Nielson heard oral argument on cross motions for partial summary judgment. (Doc. # 45-7). Judge Nielson held that Premium Assignment's

---

[1] The Policy, originally written by Evanston, included two separate entities: Naresh B. Dave, M.D. and N.B. Dave, M.D., P.A. When Premium Assignment issued its notice of cancellation, the notice did not identify N.B. Dave, M.D., P.A. The DeLoreys' complaint included both N.B. Dave, M.D. and N.B. Dave, M.D., P.A. as defendants.

Notice effectively canceled the Policy on February 5, 2003, and that neither party was required by statute or regulation to provide any further notices to any parties or entities other than the insured. (Id. at 17-18). The court and the parties noted that the case was headed for trial during the week of March 21, 2011. (Id. at 68-69). Then, on March 22, 2011, Evanston filed a voluntary dismissal without prejudice of the state court action. (Doc. # 4 at ¶ 4).

On November 22, 2011, Evanston filed the instant Complaint against Premium Assignment for indemnity, equitable subrogation and equitable contribution (Doc. # 1), mirroring the third-party complaint filed in state court. On December 22, 2011, Premium Assignment filed a motion to stay proceedings pending an award of costs from the voluntarily dismissed action pursuant to Federal Rule of Civil Procedure 41(d). (Doc. # 4). After hearing the parties' arguments and evidence, the Court granted the motion on March 23, 2012, and ordered the case stayed and administratively closed until Evanston paid Premium Assignment $29,000.00. (Doc. # 26). Evanston filed its notice of compliance on April 11, 2012 (Doc. # 29), and the Court lifted the stay on April 12, 2012 (Doc. # 30). Premium Assignment filed its Answer and Affirmative Defenses (Doc. # 33) on April 30, 2012.

On May 25, 2012, Premium Assignment filed a motion for Judgment on the Pleadings (Doc. # 36), asserting that "each cause of action alleged by Evanston is premised upon allegations that Premium Assignment wrongfully canceled [the Policy,] and that Evanston relied upon the validity of the cancellation [to Evanston's detriment.]" (Id. at ¶ 8). Premium Assignment argued that the "issue of whether Premium Assignment committed any wrongdoing has been decided in favor of Premium Assignment by a Florida state court in Case No. 05-4373." (Id.). In light of that, Premium Assignment argued that Evanston's claims were collaterally estopped and, in any event, Evanston could not plead or prove any set of facts that would entitle it to relief. (Id. at ¶ 9). On July 3, 2012, the Court denied the motion due to the limited state court record and procedural posture of the case. (Doc. # 40).

## II.  Legal Standard

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ.,

93 F.3d 739, 742 (11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997).

The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. <u>See</u> <u>Porter v. Ray</u>, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. <u>See</u> <u>id</u>. When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing there is a genuine issue for trial. <u>See</u> <u>id</u>.

## III. <u>Collateral Estoppel</u>

Premium Assignment contends that Evanston's claims are precluded under the doctrine of collateral estoppel. (Doc. # 42 at 10). Collateral estoppel, or "issue preclusion," applies when (1) the issue at stake is identical to the one alleged in the prior litigation; (2) the issue was actually litigated in

the prior proceeding; (3) the determination of the issue was a critical and necessary part of the judgment in the earlier action; and (4) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue in the prior proceeding. <u>Greenblatt v. Drexel Burnham Lambert, Inc.</u>, 763 F.2d 1352, 1360 (11th Cir. 1985).

Premium Assignment contends that the each count of the Third-Party Complaint hinges upon Evanston's claim that Premium Assignment wrongfully canceled the Policy. Premium Assignment argues that, based upon Judge Nielson's holding that Premium Assignment's notice was sufficient to cancel the Policy, Premium Assignment committed no wrongdoing and cannot be held liable to Evanston under any theory. (Doc # 42 at 11).

Evanston contends that the issue of Premium Assignment's wrongdoing was not decided and that Evanston's allegations as to Premium Assignment's wrongdoing are not limited to the cancellation of the Policy. (Doc. # 47 at 6). According to Evanston, the scope of this dispute also includes positions taken by Premium Assignment in the underlying state court action and Premium Assignment's refusal to participate in various settlement negotiations or accept the defense in the underlying action. (<u>Id.</u>).

10

This Court is not convinced that all the issues at stake here were actually litigated in state court. The parties' cross motions for partial summary judgment in the state court action addressed the effectiveness of Premium Assignment's cancellation and whether any additional notices were required by statute. (Doc. ## 45-4, 45-5). While Judge Nielson's order details his findings with regard to the statutory notice requirements, it does not fully address any alleged wrongdoing by Premium Assignment. Furthermore, the state court action, involving identical claims as this case, was headed for trial until Evanston voluntarily dismissed its complaint without prejudice. Upon due consideration, the Court denies Premium Assignment's Motion as to collateral estoppel.

As a side matter, Evanston asks this Court to hold, based upon Judge Nielson's order, that Premium Assignment's February 4, 2003, Notice of Cancellation canceled the policy and that Evanston properly relied upon Premium Assignment's Notice. (Doc. # 43 at 15). The Court finds that Premium Assignment's Notice did cancel the policy as of February 5, 2003. The Court will take up the issue of Evanston's reliance below.

IV. **Summary Judgment**

Evanston moves for summary judgment as to Count I (indemnity) and Count II (equitable subrogation) of the

Complaint. (Doc. # 43). Although Premium Assignment seeks "an order of final summary judgment on all of the Plaintiff's claims," its Motion appears to address only Count I. It does not explicitly argue its case as to equitable subrogation or contribution, although it does argue that all of Evanston's claims fail because Premium Assignment committed no wrongdoing. (Doc. # 42).

### A.  Indemnity

Evanston's claim of indemnity against Premium Assignment asserts that Evanston faced liability under the DeLoreys' lawsuit only because of Premium Assignment's acts and because Evanston relied upon the validity of Premium Assignment's cancellation of the Policy. (Doc. # 1 at ¶ 75). Evanston contends that the DeLoreys' claims were for Premium Assignment's breaches of its duties, and that Evanston could be liable only if Premium Assignment wrongfully canceled the Policy. (Id. at ¶¶ 76-77). Thus, Evanston argues that its liability to the DeLoreys could be based only upon vicarious, constructive, derivative or technical liability for Premium Assignment's acts in cancelling the policy. (Id. at ¶ 78).

"Indemnity is a right which inures to one who discharges a duty owed by him, but which, as between himself and another, should have been discharged by the other and is allowable only

12

where the whole fault is in the one against whom indemnity is sought." Houdaille Indus., Inc. v. Edwards, 374 So. 2d 490, 492-93 (Fla. 1997). "It shifts the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the costs because it was the latter's wrongdoing for which the former is held liable." Id. at 493. "Under Houdaille, if the plaintiff's recovery is necessarily based on the culpable conduct of the defendant, then no cause of action for indemnity will lie." Rabon v. Automatic Fasteners, Inc., 672 F.2d 1231, 1235 (5th Cir. 1982).

There are no allegations of a contractual agreement for indemnity between Evanston and Premium Assignment. Thus, "[f]or the right to indemnification to arise, there must be a special relationship between the parties that gives rise to the technical liability of the would-be indemnitee." Horowitz v. Laske, 855 So. 2d 169, 174 (Fla. 5th DCA 2003). A third-party complaint for common law indemnity must allege: "(1) that there existed a special duty running from the indemnitor to the indemnitee; (2) that the indemnitor breached that duty; (3) that the plaintiff's injuries resulted from the breach; and (4) that the indemnitee can be held liable for the

13

injuries resulting to the plaintiff from the indemnitor's acts." Rabon, 672 F.2d at 1235.

Evanston alleges that Premium Assignment "had duties to Dr. Dave, NB Dave, M.D., P.A., the Dave estate and Evanston to properly cancel the policy in compliance with Florida law." (Doc. # 1 at ¶ 70). Evanston further alleges that it "relied on [Premium Assignment's] proper performance of those duties when Evanston declined to defend the medical malpractice action brought by the DeLoreys against the Dave estate and when it declined coverage." (Id. at ¶ 71).

Fla. Stat. § 627.848 governs the cancellation of an insurance contract by a premium finance company:

> (1) When a premium finance agreement contains a power of attorney or other authority enabling the premium finance company to cancel any insurance contract listed in the agreement, the insurance contract shall not be canceled unless cancellation is in accordance with the following provisions:
>> (a)(1) Not less than 10 days' written notice shall be mailed to each insured shown on the premium finance agreement of the intent of the premium finance company to cancel her or his insurance contract unless the defaulted installment payment is received with 10 days.
>> . . . .
>> (c) Upon receipt of a copy of the cancellation notice by the insurer or insurers, the insurance contract shall be canceled as of the date specified in the cancellation notice with the same force and effect as if the notice of cancellation had been submitted by the insured herself or himself, whether or not the premium finance company has complied with the notice

14

> requirement   of   this   subsection, without
> requiring any further notice to the insured or
> the return of the insurance contract.
>                 . . . .
> (f) If an insurance contract is canceled by an
> insurer  upon  the  receipt  of  a  copy  of  the
> cancellation  notice  from  a  premium  finance
> company, and if such premium finance company
> has failed to provide the notice required by
> this  subsection,  the  insured  shall  have  a
> cause  of  action  against  the  premium  finance
> company for damages caused by such failure to
> provide notice.

Fla. Stat. § 627.848(1) (emphasis added). The insurer need not

confirm that the premium finance company complied with its

notice requirement before cancelling the policy. Bamboo Garden

of Orlando, Inc. v. Oak Brook Prop. & Cas. Co., 773 So. 2d 81,

84 (Fla. 5th DCA 2000). Instead, the insured has a cause of

action against the premium finance company in such an

instance. Id. The purpose of this statutory framework is to

enable a premium finance company to cancel a policy for

nonpayment yet "give the insured timely notice of the

impending cancellation so as to allow the insured to take

appropriate action." Ins. Co. of N. Am. v. Cooke, 624 So. 2d

252, 255 (Fla. 1993).

The question before this Court is whether Premium

Assignment owes Evanston a special duty under this statutory

framework. It appears that no Florida case directly addresses

the question of indemnity as between an insurer and a premium

finance company. However, other jurisdictions with similar statutory schemes have held that a premium finance company does not owe a duty to the insurer.

Notable among these is <u>Home Mutual Insurance Co. v. Broadway Bank and Trust Co.</u>, 428 N.E.2d 842 (N.Y. 1981). There, the court held that

> a premium finance agency is under no duty to the insurer . . . with respect to cancellation of an . . . insurance policy after default by the insured in payment to the agency of a premium installment, nor does its inaccurate representation to the insurer that the policy has been properly canceled impose on it any liability to the insurer for moneys paid in settlement of a policy claim.

<u>Id.</u> at 843. The court found that in choosing to cancel the premium finance company "was acting solely for its own interest and not for the purpose of extending any advantage to the carrier." <u>Id.</u> at 845. Therefore, "the carrier had no right either to demand or expect cancellation of the obligation it had assumed when it entered into the contract of insurance." <u>Id.</u> at 845. This Court is persuaded by this reasoning.

Evanston relies upon <u>Ingram v. Nationwide Mutual Insurance Co.</u>, 168 S.E.2d 224 (N.C. 1969) for the proposition that a premium finance company may be liable to an insurer for indemnification. That case allowed an insurer's indemnity claim against a premium finance company to go forward based

upon <u>Grant v. State Farm Mutual Auto Insurance Co.</u>, 159 S.E.2d 368 (N.C. 1968). In <u>Grant</u>, the court held that an insurer is responsible for showing that the premium finance company complied with all statutory notice requirements before the insurer can cancel the policy. <u>Id.</u> at 371. The court reasoned that this was not an undue burden because the insurer had the financial leverage to require a premium finance company to provide proof of compliance. If the premium finance company were to mislead the insurer by wrongfully requesting cancellation, the insurer could "seek redress from the premium finance company." <u>Id.</u> Given that Florida's statute eliminates the requirement that an insurer prove the premium finance company's compliance with its notice requirements, the Court finds this line of reasoning inapposite.[2]

Evanston argues that Fla. Stat. § 627.848(1)(c) puts the onus on the premium finance company to properly cancel the policy and leaves the insurer with no choice but to cancel the

---

[2] Evanston asserts that "the issue regarding the duties a premium finance company owes to the insurer and the extent of damages an insurer may recover was fully briefed and ruled upon in the state court action," noting that the state court held that it would follow the North Carolina case law. (Doc. # 47 at 12 n.6). Judge Nielson did deny Premium Assignment's motion to limit damages to the refunded unearned premium, following North Carolina case law on that issue. (Doc. # 45-7 at 20). The Court does not agree that the issue of duty was resolved by this holding.

policy pursuant to the premium finance company's notice. (Doc. # 43 at 20). As such, Evanston concludes that Premium Assignment owed a duty to both Evanston and Dr. Dave under Fla. Stat. § 627.848(1)(c). (Id. at 21). That is reading too much into the statutory framework.

An insurer, which has contractual and good faith obligations to the insured, is not a passive conduit for any wrongdoing by a premium finance company. Under Fla. Stat. § 627.848, insurers are required, among other things, to ascertain the validity of the premium finance company's power of attorney before cancelling a policy. Bamboo Garden, 773 So. 2d at 84. The statute does not demand that insurers blindly accept cancellation notices from a premium finance company under any circumstance. "Insurance coverage is a far too important component of doing business to allow cancellation of insurance under section 627.848 in such a cavalier manner." Id. at 85.

Where the Florida Legislature did take away the insurer's discretion–requiring cancellation irrespective of a premium finance company's compliance with its statutory notice requirements–the Legislature provided for a remedy as between the insured and the premium finance company. That "does not, however, stand for the proposition that an insurance premium

18

finance company owes any duty to the insurer." Univ. Prem.
Acceptance Corp. v. Guaranty Nat'l Ins. Co., 982 S.W.2d 214,
217 (Ky. 1998). Fla. Stat. § 627.848 does not create a special
relationship between Evanston and Premium Assignment.

Evanston further argues that Premium Assignment owed Dr.
Dave and Evanston a duty of care under the so-called
"undertaker's doctrine." (Doc. # 43 at 21). "Whenever one
undertakes to provide a service to others, whether one does so
gratuitously or by contract, the individual who undertakes to
provide the service-i.e., the 'undertaker'-thereby assumes a
duty to act carefully and to not put others at undue risk of
harm." Clay Elec. Co-op, Inc. v. Johnson, 873 So. 2d 1182,
1186 (Fla. 2003). The court in Home Mutual addressed this
question and found that the undertaker's doctrine does not
apply: "When the rule has been held applicable, it has not
been applied to one, as the [premium finance company] here,
who justifiably undertakes a course of conduct in his own
behalf and in furtherance of his own interests, but to one
whose effort is extended for the purpose of aiding or serving
another." 428 N.E.2d at 576. As noted above, Premium
Assignment canceled the Policy in order to recoup the unearned
premium upon Dr. Dave's default. Thus, the "undertaker's
doctrine" does not establish a special duty here.

Evanston alleges that its ability to defend itself against the DeLoreys' claims "was compromised by the positions taken by [Premium Assignment]." (Doc. # 1 at ¶ 80). This allegation does nothing to bolster Evanston's indemnity claim as it does not allege any harm to the DeLoreys. Furthermore, when Evanston chose to deny coverage based upon Premium Assignment's Notice, it did so with the burden of proving its cancellation defense. Bamboo Garden, 773 So. 2d at 85; Hall v. T.C. Saffold Paving Serv., 397 So. 2d 725, 726 (Fla. 1st DCA 1981). The Court is not persuaded that the "totality of the circumstances," including the positions taken by Premium Assignment in state court, combine to create a special duty flowing from Premium Assignment to Evanston.

The Court similarly rejects Evanston's detrimental reliance argument. Other courts have found that an insurer's obligation arises from its policy, not from a premium assignment company's cancellation. In Carroll v. State Farm Mutual Insurance Co., the court reasoned that because the policy was paid in full, the insurer's position was no different after the ineffective cancellation than it was before. 419 So. 2d 57, 59 (La. App. 1982). In Home Mutual, the court found that the only action the insurer took in reliance of the premium finance company's misrepresentation was to

20

refund the unearned premium; it could not have done anything to relieve itself of its obligations under the insurance contract that was not effectively canceled. 428 N.E.2d at 847. "That it lost a windfall it might have had had the [premium finance company] effectively canceled the policy before the [claim] occurred is no ground for shifting to the [premium finance company] the economic obligations which stemmed from its own insurance agreement." Id. at 847-48.

The Court finds no basis for a "special duty" as between Evanston and Premium Assignment, therefore Evanston's indemnity claim fails as a matter of law. The Court denies Evanston's Motion as to Count I, and grants summary judgment to Premium Assignment as to this claim.

### B.   Equitable Subrogation

In Count II, Evanston asserts a claim of equitable subrogation against Premium Assignment. "The doctrine of equitable subrogation is created not by contract, but by the legal consequences of the acts and relationships of the parties." Dade County Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 646 (Fla. 1999).

> Equitable subrogation is generally appropriate where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee

21

> paid off the entire debt, and (5) subrogation would
> not work any injustice to the rights of a third
> party.

Id. "The right of subrogation is not necessarily confined to those who are legally bound to make payments, but extends as well to persons who pay the debt in self protection, since they might suffer loss if the obligation is not discharged." W. Am. Ins. Co. v. Yellow Cab Co. Of Orlando, Inc., 495 So. 2d 204, 207 (Fla. 5th DCA 1986).

In its Motion, Evanston argues that because Premium Assignment's Notice canceled the Policy, Premium Assignment must have done something wrong for Evanston to be liable to the DeLoreys. (Doc. # 43 at 16). Furthermore, Evanston contends that Premium Assignment's position in the underlying litigation that Evanston could not rely on Premium Assignment's Cancellation Notice insinuates that Premium Assignment had done something wrong. (Doc. # 47 at 6 n.2). As such, if it had been found that Premium Assignment failed to give proper notices or acted on an expired power of attorney, "Evanston faced paying a debt that [Premium Assignment] by statute primarily owed to the DeLoreys." (Doc. # 43 at 23).

If Premium Assignment had not fulfilled its notice requirements under Fla. Stat. § 627.848, the DeLoreys would have had a claim against it. Bamboo Garden, 773 So. 2d at 84.

22

If Premium Assignment had acted on an expired power of attorney, the Policy would not have been effectively canceled. Id. However, Judge Nielson held that the Policy was effectively canceled and that both parties adequately fulfilled their notice requirements. Based upon that, Premium Assignment asserts its innocence and further argues that all of the DeLoreys' claims alleged wrongdoing by Evanston. (Doc. # 48 at 17).

For its part, Evanston contends that "[i]t was always Evanston's position in the state court litigation that [Premium Assignment] properly canceled the policy; however, [Premium Assignment] put the validity of its notice of cancellation in question." (Doc. # 47 at 6 n.2). "Now, in this action [Premium Assignment] sets forth arguments completely contradictory to its previous position, in that [Premium Assignment] now claims it had done nothing wrong in its cancellation of the insurance policy." (Id.).

Although the facts leading up to the state court action are generally undisputed, the parties dispute the basis of the DeLoreys' claims, Evanston's settlement, and Premium Assignment's role in this matter. Indeed, in its response to Premium Assignment's Motion, Evanston states that it agrees with almost all of Premium Assignment's "undisputed facts"

23

except for matters related to the underlying action. (Doc. # 47 at 3). In order to determine primary responsibility for the monies paid to the DeLoreys, this Court would have to draw inferences from allegations made in an action in another court and weigh the parties' credibility.

The Court is not in a position, on the present record, to determine whether Premium Assignment would have been primarily liable to the DeLoreys in the underlying lawsuit. The Court finds that material facts in dispute preclude summary judgment as to Evanston's equitable subrogation claim, and therefore denies both Motions as to Count II.

### C.   <u>Equitable Contribution</u>

Evanston does not seek summary judgment as to Count III, for equitable contribution. Premium Assignment thus assumes that Evanston admits Premium Assignment is entitled to summary judgment as to that claim. That argument has no merit. Premium Assignment further argues that Evanston's contribution claim fails because Premium Assignment has done nothing wrong, and contribution is available only to joint wrongdoers. <u>Dade County Sch. Bd.</u>, 731 So. 2d at 641 n.2.

For the reasons set forth with regard to equitable subrogation, the Court finds that material facts in dispute preclude summary judgment as to the equitable contribution

claim. The Court therefore denies Premium Assignment's Motion as to Count III.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Plaintiff Evanston Insurance Company's Motion for Summary Judgment (Doc. # 43) is **DENIED.**

(2)  Defendant Premium Assignment Corporation's Motion for Summary Judgment (Doc. # 42) is **GRANTED** as to Count I for indemnity. The Motion is otherwise **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>20th</u> day of November, 2012.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record