```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                        TAMPA DIVISION
```

EVANSTON INSURANCE COMPANY,

              Plaintiff,
v.                           Case No. 8:11-cv-2630-T-33TGW

PREMIUM ASSIGNMENT CORPORATION,

              Defendant.
_____/

**ORDER**

This cause is before the Court pursuant to Defendant Premium Assignment Corporation's Motion in Limine to Exclude Expert Testimony of Dennis G. Diecidue, Esq. (Doc. # 61) and Motion in Limine to Exclude Expert Testimony of Daniel J. Dupre (Doc. # 62), both filed on December 14, 2012. Plaintiff Evanston Insurance Company filed responses thereto (Doc. ## 64, 65) on December 21, 2012. The Court denies the Motions without prejudice as follows.

**I.   Factual Background and Procedural History**

Evanston issued a Physicians, Surgeons and Dentists Professional Liability Insurance Policy, No. MM-805312, to Naresh B. Dave, M.D. and N.B. Dave, M.D., P.A. (the "Policy") for the Policy period August 10, 2002, to February 5, 2003. (Doc. # 1 at ¶¶ 6, 20). The six-month premium on the Policy was $36,153.70. (Id. at ¶ 7).

Premium Assignment entered into a Premium Finance Agreement (the "Agreement") with Dr. Dave on August 10, 2002. (Id. at ¶ 7). Under the Agreement, Premium Assignment paid 75% of the Policy premium and Dr. Dave paid the remaining 25%. (Id.). Dr. Dave was further obligated to make nine monthly payments to Premium Assignment. (Id.).

To protect Premium Assignment's interest, the Agreement identified Premium Assignment as Dr. Dave's "attorney in fact" for the Policy. (Id. at ¶ 8). As attorney in fact, Premium Assignment had the power to cancel the Policy for nonpayment under the Agreement. (Id.).

On January 5, 2003, Dr. Dave died. (Id. at ¶ 9). The Estate of Dr. Dave and the Estate of N.B. Dave, M.D., P.A. (collectively the "Estate") failed to remit to Premium Assignment Dr. Dave's payment of $3,134.68 due on January 10, 2003. (Id. at ¶ 11). On or about January 15, 2003, Premium Assignment mailed a Notice of Intent to Cancel the Policy to both the Estate and to the McArthur Insurance Agency, Dr. Dave's insurance agent. (Id. at ¶ 12).

On January 20, 2003, personal representatives of the Estate contacted McArthur and indicated that the Estate received Premium Assignment's Notice and wanted the Policy canceled. (Id. at ¶ 15). McArthur urged the representatives to

continue the Policy through its scheduled expiration, then purchase "tail coverage" to provide indemnity and defense for any claims made thereafter. (Id. at ¶ 16). The Estate representatives declined to do so and instead wanted a refund of the unearned premium under the Policy. (Id. at ¶ 18).

On January 21, 2003, an attorney for Kenneth and Norma Jean DeLorey sent a letter to Dr. Dave's former office. (Id. at ¶ 14). The letter stated, "my law firm has been retained to investigate a potential claim of medical negligence arising out of the medical care and treatment of Kenneth DeLorey [by Dr. Dave.]" (Id.). The personal representatives of the Estate allegedly reviewed the letter but never informed Evanston of the letter's existence. (Id.).

On January 30, 2003, Premium Assignment faxed a Pending Cancellation Report to McArthur. (Id. at ¶ 19). On February 4, 2003, Premium Assignment issued a Notice of Cancellation to Dr. Dave's office, to McArthur and to Evanston, cancelling the Policy for nonpayment effective the following day, February 5, 2003. (Id. at ¶ 20). On February 10, 2003, McArthur conveyed to Evanston that the Estate wanted the Policy canceled as of January 5, 2003, the date of Dr. Dave's death, in order to maximize the refund of the unearned premium. (Id. at ¶ 21). Evanston accordingly canceled the Policy and reflected a

cancellation date of January 5, 2003. Evanston refunded $20,408.00 to Premium Assignment. (Id. at ¶ 22). Premium Assignment retained the amount Dr. Dave owed it, refunding $5,651.00 to the Estate. (Id.).

On February 27, 2003, Evanston received the DeLoreys' "Notice of Intent to Initiate a Claim for Medical Malpractice" against Dr. Dave. (Id. at ¶ 23). On July 25, 2003, Evanston informed the Estate that the Policy had been canceled before the DeLoreys' claim was filed and that Evanston would not undertake defense of the claim. (Id. at ¶ 24).

On September 5, 2003, the DeLoreys filed a complaint for medical negligence against the Estate in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. (Id. at ¶ 25). Ultimately, the DeLoreys and the Estate agreed to settle the case for $2,400,000.00 on the condition that the Estate assign to the DeLoreys any rights the Estate might have against Evanston. (Id. at ¶ 29). On August 6, 2004, the Estate signed a document titled "Settlement Agreement, Stipulation for Entry of Judgment." (Id. at ¶¶ 30-31). The Stipulation stated in pertinent part that "Evanston has wrongfully withdrawn from the defense and denied coverage to the Estate." (Id.).

On September 2, 2005, the DeLoreys filed an amended complaint in state court against Evanston alleging that Evanston breached its insurance contract with the Estate and committed bad faith by not defending and indemnifying the Estate against the DeLoreys' claims. (Id.). Evanston filed a third-party complaint against Premium Assignment for indemnity, equitable subrogation, and equitable contribution. (Id. at ¶ 41).

As affirmative defenses, Premium Assignment asserted that Evanston failed to investigate Premium Assignment's cancellation notice or perform any due diligence in regard to cancellation knowing that a claim had been made against Dr. Dave. (Doc. # 44-3 at 6). Additionally, Premium Assignment asserted that Evanston did not rely on Premium Assignment's cancellation notice because Evanston selected Dr. Dave's date of death as the Policy's cancellation date, and because the Notice did not include Dr. Dave's P.A.[1] (Id.). Premium Assignment likewise asserted that Evanston knew Dr. Dave was dead when it received the Notice from Premium Assignment and

---

[1] The Policy, originally written by Evanston, included two separate entities: Naresh B. Dave, M.D. and N.B. Dave, M.D., P.A. When Premium Assignment issued its notice of cancellation, the notice did not identify N.B. Dave, M.D., P.A. The DeLoreys' complaint included both N.B. Dave, M.D. and N.B. Dave, M.D., P.A., as defendants.

backdated the endorsement after receiving notice of a claim against the Policy. (Id.).

According to Evanston, the DeLoreys' assertions that Premium Assignment's Notice did not, in fact, cancel the Policy because it was based upon an expired power of attorney and was not sent to the P.A. raised the specter of a significant recovery by the DeLoreys. (Doc. # 1 at ¶ 51). Evanston thus engaged in settlement negotiations with the DeLoreys and invited Premium Assignment to participate; Premium Assignment declined to do so. (Id. at ¶¶ 54-59). Ultimately, Evanston settled with the DeLoreys for $500,000.00 in April 2009. (Id. at ¶¶ 60-61).

The dispute between Evanston and Premium Assignment proceeded and, on March 9, 2011, Judge Richard Nielson heard oral argument on cross motions for partial summary judgment. (Doc. # 45-7). Judge Nielson held that Premium Assignment's Notice effectively canceled the Policy on February 5, 2003, and that neither party was required by statute or regulation to provide any further notices to any parties or entities other than the insured. (Id. at 17-18). The court and the parties noted that the case was headed for trial during the week of March 21, 2011. (Id. at 68-69). Then, on March 22,

2011, Evanston filed a voluntary dismissal without prejudice of the state court action. (Doc. # 4 at ¶ 4).

On November 22, 2011, Evanston filed the instant Complaint against Premium Assignment for indemnity, equitable subrogation, and equitable contribution (Doc. # 1), mirroring the third-party complaint filed in state court. This Court entered its Case Management and Scheduling Order (Doc. # 22) on March 20, 2012, establishing May 18, 2012, as Evanston's deadline for expert witness disclosure and establishing July 27, 2012, as the discovery deadline. On June 1, 2012, Evanston filed an unopposed motion to stay the deadline for its expert disclosure pending the resolution of Premium Assignment's motion for judgment on the pleadings. (Doc. # 37). Although the motion to stay the deadline for expert disclosure was filed after Evanston's expert disclosure deadline, the Court granted the motion based on Evanston's representations that "the parties previously agreed to a ten day extension of time for Evanston [to] submit to Defendant its expert witness disclosures and expert reports . . . [to] June 1, 2012." (Doc. # 37 at 2). On July 3, 2012, this Court entered its Order denying Premium Assignment's Motion for Judgment on the Pleadings (Doc. # 40), triggering Evanston's duty to tender its expert disclosures. However, Evanston did

not make its expert disclosures until November 21, 2012, missing the mark by over four months. (Doc. # 64 at 6).

On November 20, 2012, this Court granted summary judgment in favor of Premium Assignment as to Evanston's indemnity claim (Count I), narrowing the claims for trial to Evanston's equitable subrogation (Count II) and equitable contribution (Count III) claims. (Doc. # 56). The case is set for a date-certain bench trial on January 14, 2013. Evanston plans to present the testimony of two expert witnesses: Daniel J. Dupre and Dennis G. Diecidue, Esq. Premium Assignment seeks an order striking these experts based on Evanston's untimely disclosure. In addition, Premium Assignment contends that these experts do not pass muster under Daubert and Rule 702, Fed. R. Evid., because neither expert will assist the trier of fact.

## II. Timeliness

It cannot be disputed that Evanston's expert disclosure was untimely here, and the Court would be amply justified in striking each expert. However, the Court declines to do so. A thorough review of the parties' submissions reveals that Premium Assignment was not prejudiced by Evanston's untimely disclosure, nor has Premium Assignment claimed any prejudice. Evanston represents that in early 2012, it informed counsel

for Premium Assignment that it planned to use the same experts that it had used in the underlying state action, that each expert would offer an opinion identical to that which was stated in the underlying state court action, and that Premium Assignment was welcome to take each of the experts' depositions if Premium Assignment so desired. (Doc. # 65 at 1). Apparently, Premium Assignment elected not to re-depose the experts, having deposed them in the underlying state court action.

This is not the case of surprise witnesses revealed on the eve of trial in an effort to gain an unfair advantage. To the contrary, Evanston "informed counsel for [Premium Assignment] that since all of its experts had been previously deposed and Evanston would not have any others to add to their disclosure, it would agree to limit the opinions of all previously disclosed and deposed experts to the opinions stated in their depositions." (Id.) In addition, Evanston now indicates that although the proffered experts will offer the same testimony as expressed in the underlying state court action, Evanston will make its experts available for deposition before trial, should Premium Assignment wish to

depose them. (Doc. # 64 at 3; Doc. # 65 at 3).[2] Considering the procedural history of this case and the lack of surprise or prejudice resulting from the untimely disclosure, the Court declines to strike the witnesses on the basis of their belated disclosure.

### III. Assistance to the Trier of Fact

In addition to challenging the experts of the basis of their untimely disclosure, Premium Assignment asserts that such experts should be stricken because their testimony will not assist the trier of fact.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

---

[2] It does not appear that Premium Assignment desires to re-depose these experts, and if it does so desire to depose them, the Court would consider re-opening discovery for the limited purpose of allowing such depositions.

Rule 702 is a codification of the Court's landmark case of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). In Daubert, the Court described the gatekeeping function of the district court to ensure expert testimony and evidence "is not only relevant, but reliable." Id. at 589. As stated in the Advisory Committee Notes accompanying Rule 702 of the Federal Rules of Evidence, "A review of the case law after Daubert shows that the rejection of expert testimony is the exception rather than the rule." See Advisory Committee Notes to the 2000 Amendment to Rule 702. In addition, the trial judge is afforded broad discretion in deciding Daubert issues. See Kuhmo Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

In the case of a bench trial, however, the Eleventh Circuit has commented that "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." United States v. Brown, 415 F.3d 1257, 1269 (11th Cir. 2005). The court has also commented that judges serving as factfinders in the context of a bench trial are less likely than jurors to be "awestruck by the expert's mystique." Id. (citing Allison v. McGhan Med. Corp., 184 F.3d 1300, 1310 (11th Cir. 1999)).

Nevertheless, in an abundance of caution, the Court will evaluate the proffered expert testimony against the touchstones of Daubert and Rule 702. In Rink v. Cheminova, Inc., 400 F.3d 1286 (11th Cir. 2005), the Eleventh Circuit set forth a three-pronged approach for doing so:

> To fulfill their obligation under Daubert, district courts must engage in a rigorous inquiry to determine whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. at 1291 (internal citations omitted). The party offering an expert has the burden of satisfying each of these elements by a preponderance of the evidence. Id. at 1292; see also Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

**A. Daniel J. Dupre**

As noted, the Court has narrowed Evanston's claims against Premium Assignment to equitable subrogation and equitable contribution. Evanston plans to utilize Dupre's testimony to elucidate:

    a.    General practices of insurance companies and the claims decision making process;

-12-

      b.    Evanston's cancellation of the policy;
      c.    Evanston's denial of a defense regarding the DeLoreys' claims against the Dave Estate and the prudence of Evanston's actions; and
      d.    Evanston's settlement of the underlying action with the DeLoreys.

(Doc. # 65 at 3). According to Evanston, Dupre "has over thirty years of experience in the insurance industry and had specific experience in the claims decision making process." (Id. at 6).

Premium Assignment's Motion to strike does not dispute Dupre's qualifications and methodology. Instead, Premium Assignment challenges Dupre's testimony based on its ability to assist the trier of fact, asserting:

> The opinions and conclusions asserted by Mr. Dupre have nothing whatsoever to do with whether the Defendant committed any wrongdoing in the process of cancelling the insurance policy at issue in this case, whether the Defendant was the primary wrongdoer, or whether the Defendant played any role at all in the wrongs alleged by the DeLoreys in the underlying case. Even if his opinions and conclusions were, for the sake of argument, helpful in the resolution of any of these questions, the evidence in this case is not beyond the understanding and comprehension of this Court.

(Doc. # 62 at 7).

Considering the intricate procedural history of this case and the complex legal and factual issues that remain to be resolved, the Court determines that Dupre will likely be able to provide helpful expert testimony based upon his specialized

knowledge gleaned from his extensive experience in the insurance industry. The Court finds no basis for striking Dupre's testimony prior to trial based upon Premium Assignment's Daubert and Rule 702 challenge. However, during the course of the bench trial, Premium Assignment may re-articulate its challenge to Dupre's testimony, if appropriate under the circumstances.

### B. Dennis G. Diecidue, Esq.

Evanston plans to utilize Dennis G. Diecidue, Esq. to present expert testimony concerning the following matters:

a. Evanston's settlement of the underlying litigation;
b. The potential bad faith claim against Evanston;
c. Issues regarding the underlying medical malpractice claim filed against the Dave Estate, and Evanston's denial of a defense to the Dave Estate; and
d. The cancellation of the policy and the potential risks faced by Evanston as a result of the cancellation.

(Doc. # 64 at 3). Evanston also indicates that Diecidue "will testify about Evanston's payment to protect its own interest, why Evanston made this payment to the DeLoreys and the fact that Evanston was not a volunteer and was not primarily responsible to the DeLoreys." (Id. at 4).

Diecidue is an attorney "with nearly fifteen years of experience in handling claims and actions against insurance

-14-

companies on behalf of plaintiffs." (Id. at 5). Similar to its arguments presented in an effort to strike Dupre, Premium Assignment focuses its challenge of Diecidue's testimony on such testimony's ability to assist the trier of fact, rather than upon Diecidue's qualifications or methodology. Specifically, Premium Assignment contends: "[T]he facts surrounding the method and timing of the cancellation of the policy at issue in this case are fully stipulated to and are not in dispute. Any issues regarding the cancellation of the policy . . . are issues of contract interpretation and/or statutory interpretation . . . exclusively for the Court to decide." (Doc. # 61 at 4).

However, in the parties' jointly prepared pretrial statement, the parties identified, among other contested issues of fact, the issues of: "(1) Whether Evanston made a payment to the DeLoreys to protect its own interest? (2) Whether Evanston did not act as a volunteer in making such payment to the DeLoreys? [and] (3) Whether Evanston was primarily liable for the debt to the DeLoreys?" (Doc. # 57-4 at 1). Thus, it appears that Diecidue will offer relevant testimony that is helpful to the Court in this complex matter. The Court denies the Motion to strike as to Diecidue; however, Premium Assignment is free to re-raise its challenge to

Diecidue's testimony during the course of the bench trial, if appropriate under the circumstances presented.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

Defendant Premium Assignment Corporation's Motion in Limine to Exclude Expert Testimony of Dennis G. Diecidue, Esq. (Doc. # 61) and Motion in Limine to Exclude Expert Testimony of Daniel J. Dupre (Doc. # 62) are **DENIED WITHOUT PREJUDICE.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 7th day of January 2013.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel of Record