UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EVANSTON INSURANCE CO.,

      Plaintiff,      Case No.: 8:11-cv-2630-T-33TGW

v.

PREMIUM ASSIGNMENT CORP.,

      Defendant.
_____/

**ORDER**

The Court held a two-day bench trial in this matter on January 14 and 15, 2013. At this point, the case has been narrowed down to Evanston Insurance Company's claim against Premium Assignment Corporation ("PAC") for equitable subrogation. After hearing from the parties and considering their written submissions (Doc. ## 87, 88, 89), the Court finds in favor of PAC. The Court's analysis is set forth in its findings of fact and conclusions of law below.

**I.    Findings of Fact**

    **A.    The Policy**

Evanston is a resident of the State of Illinois. (Doc. # 57, Ex. C, Stipulated Fact 1). PAC is a resident of the State of Florida. (Id. at Stipulated Fact 2). Evanston issued a Physicians, Surgeons and Dentists Professional

1

Liability Insurance Policy, No. MM-805312, to Naresh B. Dave, M.D. ("Dr. Dave") and N. B. Dave, M.D., P.A. ("the Practice") effective August 10, 2002. (the "Policy"). (Id. at Stipulated Fact 3). The agent who procured the insurance coverage was Douglas M. McArthur, the President of McArthur Insurance Agency, Inc. (Id. at Stipulated Fact 6).

The term of the Policy was for twelve months. (Id. at Stipulated Fact 4). The premium for the Policy was $36,153.70. (Id. at Stipulated Fact 5). Dr. Dave financed the Policy premium by borrowing from PAC. (Id. at Stipulated Fact 7). Dr. Dave paid the premium for the Policy by entering into a Premium Finance Agreement with PAC effective August 26, 2002. (Id. at Stipulated Fact 8). Evanston was paid in full for the premium it charged for the Policy. (Doc. # 84, Trial Tr. at 44:20-25).

The Premium Finance Agreement identified Naresh B. Dave, M.D. as the only Insured. (Doc. # 82, Ex. 3 at 1). The McArthur Insurance Agency filled out the Premium Finance Agreement and did not identify the Practice as an insured. (Doc. # 82, Ex. 3); (Doc. # 84, Trial Tr. at 107:4-108:13). The McArthur Insurance Agency delivered the completed and executed Premium Finance Agreement to PAC. (Id.). The Premium Finance Agreement was signed by Dr.

Dave individually and on a second line labeled as "If Insured is a corporation, or partnership, an authorized." (Doc. # 82, Ex. 3 at 1).[1]

The Premium Finance Agreement required Dr. Dave to pay 25% of the premium for the Policy. (Doc. # 57, Ex. C, Stipulated Fact 9). PAC advanced the 75% balance of the premium amount to Evanston on behalf of Dr. Dave. (Id. at Stipulated Fact 10). Dr. Dave was obligated under the Premium Finance Agreement to pay nine monthly installments of $3,134.68 to PAC to finance the premium advance. (Id. at Stipulated Fact 11). The finance charge by PAC for financing the $27,210.42 balance of Dr. Dave's premium was 8.75%. (Doc. # 82, Ex. 3).

The Premium Finance Agreement contained an "attorney-in-fact" provision that authorized PAC to "cancel and give notice of cancellation of the Scheduled Policy of Insurance to the named Insurance companies for nonpayment of premium." (Doc. # 57, Ex. C, Stipulated Fact 12). In the Premium Finance Agreement, Dr. Dave gave PAC his Power of Attorney to cancel and give notice of cancellation of the Policy to Evanston, among others, should there be nonpayment of any monthly payments, pursuant to the terms

---

[1]   The copy of the Premium Finance Agreement before the Court is of poor quality. It is barely legible and appears to be missing the bottom portion of page one.

of the Premium Finance Agreement. (Id. at Stipulated Fact 13). In the Premium Finance Agreement, Dr. Dave granted a security interest in favor of PAC for "any and all unearned premiums which may become due under the policies." (Doc. # 82, Ex. 3 at 1).

On September 3, 2002, PAC sent a Financed Premium Notice to Evanston informing Evanston that PAC was financing the premium for the Policy. (Doc. # 82, Ex. 4). The Financed Premium Notice identified the Insured as Naresh B. Dave, M.D., and requested Evanston to provide PAC "immediate notification if the above data, furnished by your agent, does not coincide with your records." (Id.). Evanston did not return the Financed Premium Notice to PAC. (Id.);(Doc. # 84, Trial Tr. at 77:2-80:2).

On November 4, 2002, PAC sent a second Financed Premium Notice to Evanston identifying the Insured as Naresh B. Dave, M.D., and again requesting Evanston to provide "immediate notification if the above data, furnished by your agent, does not coincide with your records." (Doc. # 82, Ex. 7). Evanston did not respond to the second Financed Premium Notice sent by PAC. (Doc. # 84, Trial Tr. at 80:7-14, 81:13-16). PAC and Evanston had no contractual relationship. (Doc. # 57, Ex. C, Stipulated Fact 14).

4

**B.   Death of Dr. Dave and Cancellation of the Policy**

Dr. Dave died on January 5, 2003. (Id. at Stipulated Fact 15).  Under the Premium Finance Agreement, Dr. Dave owed PAC a $3,134.68 installment payment that was due on or before January 10, 2003. (Id. at Stipulated Fact 16).  The installment payment that was due on January 10, 2003, was never paid to PAC. (Id. at Stipulated Fact 17).  On January 15, 2003, PAC mailed a Notice of Intent to Cancel the Policy to Dr. Dave and to the McArthur Insurance Agency. (Id. at Stipulated Fact 18).  The January 15, 2003, Notice of Intent to Cancel the Policy was mailed to Dr. Dave at the address of his medical office, 701 West M.L.K. Blvd., Suite 4, Tampa, FL 33603, identified in the Premium Finance Agreement. (Doc. # 82, Ex. 9).

The address to which PAC mailed the Notice of Intent to Cancel the Policy was the same address that Evanston had on record for Dr. Dave. (Doc. # 84, Trial Tr. at 73:16-74:2).  Dr. Dave was the "Owner/ Officer" of the Practice. (Doc. # 82, Ex. 76 at EIC 0567).

PAC's Notice of Intent to Cancel was based upon Dr. Dave's failure to pay the January 10, 2003, installment payment.  (Doc. # 57, Ex. C, Stipulated Fact 19).  Sometime

5

between January 20 and 22, 2003, survivors of Dr. Dave contacted the McArthur Insurance Agency and informed the Agency they had received the Notice of Intent to Cancel the Policy sent by PAC. (Id. at Stipulated Fact 20).  The survivors of Dr. Dave requested the McArthur Insurance Agency to cancel the Policy as of the date of Dr. Dave's death, January 5, 2003. (Id. at Stipulated Fact 21).

On January 21, 2003, Kenneth and Norma Jean DeLorey sent a Notice of Intent to Initiate Claim for Medical Malpractice to Dr. Dave and the Practice. (Id. at Stipulated Fact 22).  The survivors of Dr. Dave did not notify Evanston of the receipt of the DeLoreys' Notice of Intent to Initiate Medical Malpractice Claim. (Id. at Stipulated Fact 23).  On January 30, 2003, PAC faxed a Pending Cancellation Report on the Policy to the McArthur Insurance Agency. (Id. at Stipulated Fact 24).  On February 4, 2003, PAC sent a Notice of Cancellation of the Policy to Dr. Dave, the McArthur Insurance Agency, Agency Marketing Services (the wholesale broker), and Evanston. (Id. at Stipulated Fact 25).  The PAC Notice of Cancellation stated that the Policy was cancelled for nonpayment of the January 10, 2003, installment. (Id. at Stipulated Fact 26).

The PAC Notice of Cancellation specifically stated: "You are hereby notified that the policy described above is

6

cancelled for non-payment of an installment in accordance with the conditions and terms of the Premium Finance Agreement, which incorporates a power of attorney. This cancellation is effective on the day after the above captioned date, at the hour indicated in the policy as the effective time." (Id. at Stipulated Fact 27). The PAC Notice of Cancellation stated that the Policy cancellation was effective on February 5, 2003. (Id. at Stipulated Fact 28).

On February 10, 2003, a probate action was initiated by Mina Haidari and Kailash Vyas in the Circuit Court of Hillsborough County, Florida, to administer the estate of Dr. Dave and the Practice. (Id. at Stipulated Fact 29). On February 10, 2003, the McArthur Insurance Agency informed Evanston that the Estate of Dr. Dave wanted the cancellation of the Policy to be effective January 5, 2003, the date of Dr. Dave's death. (Id. at Stipulated Fact 30). On February 18, 2003, the Circuit Court for Hillsborough County, Florida, issued its Order Admitting Will to Probate and Appointing Personal Representatives. (Id. at Stipulated Fact 31). Mina Haidari and Kailash Vyas were appointed as Co-Personal Representatives of the Estate. (Id.). Evanston received PAC's Notice of Cancellation no later than February 19, 2003. (Id. at Stipulated Fact 32).

Evanston did not do anything to analyze, evaluate or determine independently whether PAC's use of the power of attorney provision in the Premium Finance Agreement was a valid exercise of authority by PAC. (Doc. # 84, Trial Tr. at 85:12-22). Evanston accepted the power of attorney "at face value." (Id.).

On February 26, 2003, Evanston issued Endorsement No. 4 to the Policy. (Doc. # 57, Ex. C, Stipulated Fact 33). Endorsement No. 4 to the Policy was addressed to the "Named Insured: NARESH B. DAVE, M.D." (Doc. # 82, Ex. 15 at 2)(Doc. # 84, Trial Tr. at 50:2-13). Endorsement No. 4 states that the Policy was cancelled effective January 5, 2003. (Doc. # 57, Ex. C, Stipulated Fact 34). Endorsement No. 4 had the effect of terminating the Policy period coverage as of January 5, 2003. (Doc. # 85, Trial Tr. at 19:21-20:2).

Endorsement No. 4 also had the effect of increasing the amount of the unearned premium to be returned to PAC and to the Estate of Dr. Dave because the Policy coverage period was shorter. (Id. at 20:16-21:12). PAC had no involvement in and nothing to do with Evanston's issuance of Endorsement No. 4. (Doc. # 84, Trial Tr. at 170:9-13). All of the Endorsements to the Policy issued by Evanston

were addressed to the "Named Insured: NARESH B. DAVE, M.D.," and no one else. (<u>Id.</u> at 72:4-11).

On February 27, 2003, Evanston received the DeLoreys' Notice of Intent to Initiate Medical Malpractice Claim from the DeLoreys' attorneys. (Doc. # 57, Ex. C, Stipulated Fact 35). On March 25, 2003, PAC received a refund of the unearned premium it had advanced on the Policy in the amount of $19,652.90. (<u>Id.</u> at Stipulated Fact 36).

### C.   **Evanston's Coverage Determination**

On July 25, 2003, Evanston informed the Estate that Evanston was denying coverage and not providing a defense because the Policy was cancelled before Evanston had any notice of the DeLoreys' claims and the DeLoreys' claims were not covered under the policy. (<u>Id.</u> at Stipulated Fact 37).

On November 10, 2003, in a letter to counsel for the Estate, Evanston confirmed its refusal to defend and indemnify the Estate against the DeLoreys' claims because the claims were expressly excluded from coverage "regardless of whether the Policy was cancelled or not." (Doc. # 82, Ex. 28).

### D.   **The DeLoreys' Medical Malpractice Action against the Estate**

On September 5, 2003, the DeLoreys filed a complaint for medical malpractice against the Estate in the Circuit Court of Hillsborough County, Florida (the "Malpractice Litigation"). (Doc. # 57, Ex. C, Stipulated Fact 38).

Evanston did not provide any defense or indemnification to the Estate in the Malpractice Litigation. (Id. at Stipulated Fact 39). On August 6, 2004, the DeLoreys and the Estate entered into a Settlement Agreement and Stipulation for Entry of Judgment in the Malpractice Litigation (the "Settlement")(Doc. # 57, Ex. C, Stipulated Fact 40);(Doc. # 82, Ex. 30 at 250-257 "Docs produced to Evanston Insurance 06-05-07").

The Settlement provided that the Estate agreed to the entry of a judgment against it in the amount of $2,400,000.00. (Doc. # 57, Ex. C, Stipulated Fact 41). The Settlement provided that the Estate assigned to the DeLoreys all of the Estate's rights and interests in any claims it had against Evanston. (Id. at Stipulated Fact 42); (Doc. # 82, Ex. 30 at 252-253 "Docs produced to Evanston Insurance 06-05-07" ¶¶ 3 & 4).

On August 4, 2004, the Estate and the DeLoreys executed an Assignment of Claims Against Shand, Morahan and Company, Inc. And Its Related Insurance Companies and Subsidiaries, Including The Evanston Insurance Company (the

10

"Assignment")(Doc. # 82, Ex. 30 at 258 "Docs produced to Evanston Insurance 06-05-07"). The Assignment assigned and transferred from the Estate to the DeLoreys any and all rights of title or claim under the Policy against Evanston. (Id.). The Assignment did not provide for any assignment or transfer of rights or interests of the Estate to the DeLoreys in any claims it might have had against PAC. (Id.).

On December 2, 2004, the Settlement in the Malpractice Litigation was confirmed and a Final Judgment in the amount of $2,400,000.00 was rendered against the Estate. (Doc. # 57, Ex. C, Stipulated Fact 43);(Doc. # 82, Ex. 32).

**E.  The DeLoreys' Lawsuit against Evanston for Bad Faith**

On May 19, 2005, the DeLoreys filed a lawsuit against Evanston for breach of the Policy and for bad faith in refusing to defend and indemnify the Estate in the Malpractice Litigation (the "Coverage Litigation). (Doc. # 57, Ex. C, Stipulated Fact 44);(Doc. # 82, Ex. 33). The DeLoreys never sued PAC for anything. (Doc. # 85, Trial Tr. at 157:11-13; 160:8-161:9).

On September 12, 2005, Evanston filed its Third-Party Complaint against PAC in the Coverage Litigation seeking indemnity and equitable contribution from PAC. (Doc. # 57,

Ex. C, Stipulated Fact 45);(Doc. # 82, Ex. 35). Evanston later amended its Third-Party Complaint against PAC in the Coverage Litigation seeking indemnity, equitable subrogation and equitable contribution. (Doc. # 82, Ex. 60).

In March 2009, Evanston invited PAC to participate in settlement negotiations with the DeLoreys; PAC declined. (Doc. # 57, Ex. C, Stipulated Fact 46). During the same timeframe, Evanston tendered the defense of the DeLoreys' claims to PAC, and PAC declined to take over the defense of the DeLoreys' claims. (Id. at Stipulated Fact 47).

In April 2009, Evanston and the DeLoreys reached a settlement. (Id. at Stipulated Fact 48). The settlement provided that Evanston would pay the DeLoreys $500,000.00, in exchange for the DeLoreys' dismissal of their claims against Evanston and execution of general release in favor of Evanston and PAC. (Id.).

### F.   **Evanston's State Court Litigation against PAC**

After settling with the DeLoreys, Evanston continued to litigate its third-party claims against PAC. (Id. at Stipulated Fact 49). On February 25, 2011, Evanston and PAC both filed Motions for Partial Summary Judgment based on Florida Statute §§ 627.848(1)(c) and (1)(d). (Id. at Stipulated Fact 50).  On March 16, 2011, the State Court

granted Evanston's Motion for Partial Summary Judgment and denied PAC's Motion for Partial Summary Judgment. (<u>Id.</u> at Stipulated Fact 51);(Doc. # 82, Ex. 77).

The State Court ruled that the Notice of Cancellation as given under Fla. Stat. § 627.848(1)(c) by PAC was sufficient cancellation of the Policy and had the effect of cancelling the Policy on February 5, 2003. (<u>Id.</u> at Stipulated Fact 52). The State Court also found that, under Fla. Stat. 627.848(1)(d), there were no other statutory or regulatory provisions or restrictions that required notice be given prior to cancellation of the Policy either by PAC or Evanston to any parties or entities other than the insured. (<u>Id.</u> at Stipulated Fact 53). In addition, the State Court determined that Fla. Stat. § 627.848(1)(d) did not require that any notice be given specifically to any "Acord certificate holders" or addressees. (<u>Id.</u> at Stipulated Fact 54). The State Court further determined that Fla. Stat. § 458.320 did not create a duty on the part of either PAC or Evanston to give notice to the Department of Health prior to cancellation of the Policy. (<u>Id.</u> at Stipulated Fact 55). The State Court held that Fla. Stat. § 627.848(1)(c) did not require Evanston to determine the validity of the power of attorney held by PAC. (<u>Id.</u> at Stipulated Fact 56).

Evanston voluntarily dismissed its State Court lawsuit days before trial was scheduled to commence on March 22, 2011. (Doc. # 4 at ¶ 4).

G.   **Evanston's Federal Court Litigation against PAC**

Evanston filed its Complaint against PAC in the instant action on November 22, 2011, asserting claims for equitable indemnity (Count I), equitable subrogation (Count II) and equitable contribution (Count III). (Doc. # 1). PAC answered and asserted its affirmative defenses on April 30, 2012. (Doc. # 33).

Evanston's equitable indemnity claim (Count I) was dismissed by entry of summary judgment in favor of PAC on November 11, 2012. (Doc. # 56).  The Court held that no special relationship or any other basis of a duty running between PAC and Evanston existed under Florida's statutory regime governing premium finance companies, § 627.848, et seq., Fla. Stat. (Doc. # 56 at 18-21).  Evanston has withdrawn its equitable contribution claim (Count III)(Doc. # 89 at 2).  Thus, the Court need only decide the merits of Evanston's equitable subrogation claim (Count II).

II.  **Conclusions of Law**

As this Court's jurisdiction is predicated upon diversity jurisdiction, this Court applies the substantive law of the forum state.

14

## A.   § 627.848 and Cancellation of the Policy

Florida Statute § 627.848 states in relevant part:

(1) When a premium finance agreement contains a power of attorney or other authority enabling the premium finance company to cancel any insurance contract listed in the agreement, the insurance contract shall not be cancelled unless cancellation is in accordance with the following provisions:

(a) 1.  Not less than 10 days' written notice shall be mailed to each insured shown on the premium finance agreement of the intent of the premium finance company to cancel her or his insurance contract unless the defaulted installment payment is received within 10 days.

2.  After expiration of such period, the premium finance company shall mail to the insurer a request for cancellation, specifying the effective date of cancellation and the unpaid premium balance due under the finance contract, and shall mail a copy thereof to the insured at her or his last known address as shown on the premium finance agreement.

PAC's January 15, 2003, Notice of Intent to Cancel Policy (Doc. # 82, Ex. 9) was fully compliant with § 627.848(1)(a)(1), Fla. Stat.  The only "insured shown on the premium finance agreement" was Naresh B. Dave, M.D. The Notice of Intent to Cancel the Policy was mailed to the only insured shown on the Premium Finance Agreement at the address for the Insured shown on the Premium Finance Agreement.

In addition, PAC's February 4, 2003, Notice of Cancellation (Doc. # 82, Ex. 12) was fully compliant with the relevant statute.  After the expiration of the ten day

15

period for payment, PAC mailed its Notice of Cancellation to Evanston, Dr. Dave, the McArthur Insurance Agency, and the wholesale insurance broker, Agency Marketing Services. The Notice of Cancellation stated the effective date of cancellation was February 5, 2003.

PAC's February 4, 2003, Notice of Cancellation (Doc. # 82, Ex. 12) effectively cancelled the Policy as of February 5, 2003. (Doc. # 56 at 11) ("The Court finds that Premium Assignment's Notice did cancel the Policy as of February 5, 2003.").

The power of attorney contained in the Premium Finance Agreement was valid and effective at the time PAC delivered its Notice of Cancellation on February 4, 2003.[2] If PAC had not complied with the notice requirements of §

---

[2] The power of attorney contained in the Premium Finance Agreement was coupled with an interest and was irrevocable, even upon the death of the grantor, Dr. Dave. Atkin v. Baier, 12 F.2d 766, 767 (5th Cir. 1926); McGriff v. Porter, 5 Fla. 373, 379 (Fla. 1853)("A power is simply collateral and without interest, or a naked power, when, to a mere stranger, authority is given to dispose of an interest, in which he had not before, nor has by the instrument creating the power, any estate whatsoever; but when the power is given to a person who derives, under the instrument creating the power, or otherwise, a present or future interest in the property, the subject on which the power is to act, it is then a power coupled with an interest."); Goeke v. Goeke, 613 So. 2d 1345, 1347 (Fla. 2d DCA 1993)("Under the common law, a power of attorney that was not coupled with an interest was [revocable].."); see also 2 FLA JUR 2D, Agency § 31, Power coupled with an interest.

627.848(1)(a)(1), Fla. Stat., the Estate of Dr. Dave would have had a direct cause of action against PAC pursuant to § 627.848(1)(f), Fla. Stat.[3]

The Estate of Dr. Dave had no claim against PAC pursuant to § 627.848(1)(f), Fla. Stat., because PAC's Notice of Cancellation was fully compliant with § 627.848, Fla. Stat. The Estate of Dr. Dave had no colorable or meritorious claims against PAC for any actions taken by PAC. Any claim that the Estate of Dr. Dave may have had against PAC pursuant to § 627.848(1)(f), Fla. Stat., or for any other claim arising out of the Premium Finance Agreement, expired on February 4, 2008, when the five-year statute of limitations ran pursuant to § 95.11(2)(b), Fla. Stat.

Evanston's Endorsement No. 4 backdating the date of Policy coverage to January 5, 2003, provided a factual basis for the DeLoreys' bad faith claim against Evanston and exposed Evanston to potential liability to the DeLoreys as assignees of the Estate of Dr. Dave. (Doc. # 84, Trial

---

[3] That section states: "If an insurance contract is canceled by an insurer upon the receipt of a copy of the cancellation notice from a premium finance company, and if such premium finance company has failed to provide the notice required by this subsection, the insured shall have a cause of action against the premium finance company for damages caused by such a failure to provide notice." Fla. Stat. § 627.848(1)(f).

Tr. at 83:18-84:12); (Doc. # 85, Trial Tr. at 160:9-162:24).

Evanston made its decision to refuse to defend and indemnify the Estate of Dr. Dave against the medical malpractice claims asserted by the DeLoreys on its own, and Evanston could not have detrimentally relied on any action taken by PAC because Evanston's decision to deny coverage under the Policy came with the burden of proving its cancellation defense. (Doc. # 56 at 20)("[W]hen Evanston chose to deny coverage based upon Premium Assignment's Notice, it did so with the burden of proving its cancellation defense."); see also Bamboo Garden of Orlando, Inc. v. Oak Brook Prop. & Cas. Co., 773 So. 2d 81, 85 at n.2 (Fla. 5th DCA 2000); (Doc. # 89 at 9).

The cancellation of the Policy by PAC for non-payment of the January 10, 2003, installment was not the proximate cause of any harm or damage to the Estate of Dr. Dave or the DeLoreys because the cancellation was proper and lawful.

In the Settlement entered into between the Estate of Dr. Dave and the DeLoreys, the DeLoreys expressly agreed "to enforce the judgment **solely against Evanston**, its agents, representatives, subsidiaries, parent corporations, affiliates or assigns." (Doc. # 82, Ex. 30 at 252 "Docs

18

produced to Evanston Insurance 06-05-07" ¶ 3)(emphasis added). In that same agreement, the Estate of Dr. Dave expressly agreed to "assign their **rights against Evanston** to [the DeLoreys]." (Doc. # 82, Ex. 30 at 252-253 "Docs produced to Evanston Insurance 06-05-07" ¶ 4)(emphasis added).

Furthermore, in the Assignment, the Estate of Dr. Dave expressly "assign[ed] and transfer[red] any and all rights of title of claim under the above referenced policy **against 'Evanston'** to [the Deloreys]." (Doc. # 82, Ex. 30 at 258 "Docs produced to Evanston Insurance 06-05-07")(emphasis added).

Neither the Settlement nor the Assignment are ambiguous, and parole evidence is not necessary to interpret the meaning of these agreements. The DeLoreys had no standing to bring any claims against PAC as assignees of the Estate of Dr. Dave, because the Estate of Dr. Dave possessed no such claims and, even if they did, no such claims were transferred by the Estate of Dr. Dave to the DeLoreys.

**B.   Equitable Subrogation**

Under Florida law, the elements of equitable subrogation are: "(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not

act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third-party." Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 646 (Fla. 1999).

"As a result of equitable subrogation, the party discharging the debt [Evanston], stands in the shoes of the person whose claims have been discharged [the DeLoreys], and thus succeeds to the rights and priorities of the original creditor [the DeLoreys]." Id. (citing E. Nat'l Bank v. Glendale Fed. Sav. & Loan Ass'n., 508 So. 2d 1323, 1324 (Fla. 3d DCA 1987)). "From this premise, it logically follows that if the subrogor, [the DeLoreys], ha[d] no rights or priorities against a specified third-party, [PAC], then the subrogee, [Evanston], has nothing to inherit as against that third-party." Dade Cnty. Sch. Bd., 731 So. 2d at 647.

PAC has stipulated that elements one, two, and four of Evanston's equitable subrogation claim have been proven.[4]

_____

[4] PAC stipulates that Evanston made the payment to the DeLoreys to protect its own interests, that Evanston was not a volunteer, and that Evanston paid the entire debt owed to the DeLoreys. (Doc. # 84, Trial Tr. at 24:11–25:12).

Thus, Evanston has the burden of proof to establish elements three and five of its claim. <u>Villa Maria Nursing & Rehab. C v. S. Broward Hosp. Dist.</u>, 8 So. 3d 1167 (Fla. 4th DCA 2009)(subrogee bears the burden of proving all five elements of equitable subrogation).

### 1.   Primary Liability for the Debt

Evanston failed to establish element three--that it was not primarily liable for the debt or that PAC was primarily liable for the debt.

### i.   PAC Did Nothing Wrong

All of PAC's actions in January and February, 2003, were authorized by and compliant with § 627.848, <u>et</u> <u>seq.</u>, Fla. Stat. PAC had no liability at all for any of its conduct in this case to the Estate of Dr. Dave or to the DeLoreys.

Evanston admits that PAC did nothing wrong in its cancellation of the Policy on February 4, 2003. Specifically, Jeanette McDonough, in-house counsel for Evanston testified:

> Q. Did Evanston maintain throughout the litigation that PAC properly cancelled the policy?
> A. Yes.
> Q. Did Evanston ever change in that position?
> A. No, we did not.

21

(Doc. # 84, Trial Tr. at 193:2-194:2).  In addition, Evanston's expert witness, Dennis Diecidue, Esq., testified:

> Q.   So you have no criticism of the cancellation itself by PAC?
> A.   No.  The cancellation was effective, yes.
> Q.   The Court found later that it was?
> A.   Yes.
> Q.   And the cancellation was perfect; right?
> A.   Yes.
> Q.   On page- you also agreed that the power of attorney was a valid power of attorney.  That was on page 78.
> A.   Page 78. Okay. Yes.
> Q.   So the power of attorney was valid, it was coupled with an interest and the cancellation was perfect?
> A.   Yes.  That's what my opinion was at that time.
> Q.   Well, have you changed that opinion?
> A.   No.  I think Judge Nielsen confirmed that my opinion was correct.

(Doc. # 85, Trial Tr. at 73:25-74:18). Evanston's trial counsel also confirmed that PAC did nothing wrong and testified:

> THE COURT:    So you agree—just so I'm certain that I understand your position, you agree that PAC properly cancelled the policy; correct?
> MR. GIBSON:    No doubt.   There's no question about that.   And that should have ended the argument.  . . .
> THE COURT:    And there's only an equitable remedy if there was a problem with the cancellation?
> MR. GIBSON:    No doubt.   Absolutely no doubt. There is no legal cause of action that Evanston has or had proceeded on against PAC, exactly.

(Doc. # 85, Trial Tr. at 146:17-147:2).

### ii.  The DeLoreys Alleged Direct Wrongdoing by Evanston

Among other allegations, the DeLoreys' Amended Complaint asserted that Evanston wrongfully backdated the cancellation of the insurance policy and improperly denied coverage:

> 18. Despite that the Notice of Cancellation was dated February 4, 2003, EVANSTON unlawfully backdated cancellation to January 5, 2003.
> . . . .
> 33. EVANSTON wrongfully refused to defend Naresh B. Dave, M.D. and his P.A. in the underlying case initiated by Plaintiffs maintaining that it had cancelled the claims-made policy prior to Plaintiffs' claim being received by Naresh B. Dave, M.D., and/or his legal representatives.
> 34. The underlying complaint contains numerous allegations of negligent diagnosis and treatment prior to and after the alleged knee surgery performed by Naresh B. Dave, M.D., as well as numerous allegations that Naresh B. Dave, M.D. failed to inform and advise of other treatments and failed to obtain informed consent.
> 35. The allegations cited in the foregoing paragraph are covered claims of medical negligence before and after the performance of surgery and independent of any negligence during the performance of any surgery, thereby triggering a duty to defend and indemnify.

(DeLorey Am. Compl. Doc. # 82, Ex. 34 at ¶¶ 18, 33-35).

The Estate of Dr. Dave, the Practice, and the DeLoreys made no claims against PAC for any wrongdoing. Not a single allegation in the DeLoreys' Amended Complaint asserts that PAC did anything wrong. The DeLoreys' claims

are all directly asserted against Evanston for alleged wrongdoing by Evanston.

PAC cannot be liable to Evanston, standing in the shoes of the DeLoreys, because the DeLoreys had no claims against PAC and PAC had no liability to the DeLoreys.

### iii. Evanston Acted Independently of PAC in Denying Coverage

PAC's cancellation of the Policy did not prevent Evanston from defending and indemnifying the Dave Estate. The evidence establishes that Evanston determined that the DeLoreys' negligence allegations were expressly excluded under the Policy, so Evanston denied coverage to Dr. Dave's Estate regardless of whether the Policy was cancelled for non-payment. The Policy contained an exclusion for performing surgery, and the DeLoreys claimed that Dr. Dave negligently performed a knee replacement surgery.

In a letter dated July 25, 2003, coverage counsel for Evanston indicated to counsel for the Dave Estate: "Evanston is denying coverage based on the clear and express language in the exclusions as to surgery performed upon Mr. DeLorey and any infections or complications arising from surgery." (Doc. # 82, Ex. 23 at 3-4). In a follow-up letter dated November 10, 2003, Evanston's coverage counsel explained:

> Although I have explained [that Evanston is] denying coverage in this claim in much greater detail in my correspondence of July 25, 2003, please be advised that this policy was in fact cancelled due to non-payment and a premium for the sum of $20,408.00 was returned. **Regardless of the fact that this policy was in fact cancelled before there was any notice of suit in this matter, this would not have been a covered claim.** I have also detailed in my correspondence of July 25, 2003, additional reasons for denial of coverage.
>
> As you will note in that correspondence, and also in our various discussions regarding this matter, Dr. Dave elected to insure himself with a very specific exclusion regarding coverage for any problems relating to any type of surgery performed by Dr. Dave. As outlined by Kenneth DeLorey and his wife, this suit is a result of alleged malpractice by Dr. Dave's numerous surgeries and follow-up care. **Thus, even if this policy was in full force and effect, there would be no coverage rendered for defense in this matter.**

(Doc. # 82, Ex. 28 at 1-2)(emphasis added).

Evanston denied coverage no matter what PAC did. PAC played no role in Evanston's decision to refuse to defend and indemnify the Estate in the Malpractice Litigation based on Policy exclusions. (Doc. # 85, Trial Tr. at 87:1-13). PAC cannot be liable, much less "primarily liable," for the harm alleged by the DeLoreys against Evanston for a decision that PAC played no role in.

Furthermore, PAC's defensive positions asserted against Evanston in the State Court Coverage Litigation are not relevant to Evanston's claim for equitable subrogation

in this case because those State Court allegations and proofs establish no liability or harm to the DeLoreys standing in the shoes of the Estate of Dr. Dave.

PAC's defensive positions asserted against Evanston in the State Court Coverage Litigation were not the proximate cause of any harm or damage to the Estate of Dr. Dave or to the DeLoreys. Evanston is not entitled to equitable subrogation based on allegations that PAC imperiled or compromised its defense of the DeLoreys claims. (Doc. # 56 at 20). Evanston's allegation that its ability to defend itself against the DeLoreys' claims was compromised by the positions taken by PAC do nothing to allege or establish any harm to the DeLoreys caused by PAC.

### 2. Injustice to PAC

In addition, Evanston failed to establish element five--that subrogation would not work an injustice to PAC. Imposing liability on PAC in this case would work an injustice to PAC because PAC never contemplated or agreed to become an insurer of Evanston, and the payment of damages for risks undertaken by Dr. Naresh B. Dave, M.D., was exactly what Evanston agreed to do.[5]

---

[5] As to this final element, Evanston urges the Court to apply the law of North Carolina under the assertion that North Carolina's "statutory scheme is closer to the Florida scheme." (Doc. # 85, Trial Tr. at 140:8-141:2). The Court

Imposing liability on PAC in this case would work an injustice on PAC because if PAC had done anything wrong in the cancellation of the Policy, the Estate of Dr. Dave would have a direct statutory cause of action against PAC for damages pursuant to § 627.848(1)(f), Fla. Stat.  The Estate of Dr. Dave never initiated or pursued such a claim and the Estate of Dr. Dave never assigned any such claims to the DeLoreys. The DeLoreys never attempted to initiate or pursue any claims against PAC whether or not they had standing to do so.  Allowing subrogation in this case would be tantamount to reviving claims that, if they ever existed, expired in February 2008, when the statute of limitations ran and foreclosed any such claims against PAC.

This Court agrees with Evanston that the existence of "a release or an assignment of claims are not necessary predicates to prevailing on a claim for equitable subrogation." (Doc. # 89 at 3).  The Court also agrees with Evanston that "the doctrine of equitable subrogation is

---

declines and finds North Carolina law inapposite. Compare Grant v. State Farm Mutual Auto Ins. Co., 159 S.E.2d 368, 371 (N.C. 1968)(insurer has burden to prove compliance with notice requirements by premium finance company) with Bamboo Garden of Orlando, Inc. v. Oak Brook Prop. & Cas. Co., 773 So. 2d 81, 84 (Fla. 5th DCA 2000)(Florida legislature eliminated insurer's burden to prove compliance with notice requirement by premium finance company).

.

created not by contract, but by the legal consequences of the acts and relationships of the parties." (Id.) citing Dade Cnty. Sch. Bd., 731 So. 2d at 646). However, Evanston has not met its burden of demonstrating that equitable subrogation is warranted. Evanston suggests that PAC asserted inconsistent positions at the State Court level. (Doc. # 89 at 23). Evanston sued PAC in September 2005, and the parties have been embroiled in hard-fought litigation ever since. This Court is not convinced that PAC's evolving State Court litigation strategy, including its "intransigence," warrants the application of equitable subrogation. (Id. at 26).

The present Court and the State Court have both found that PAC's Notice of Cancellation effectively cancelled the Policy on February 5, 2003. As posited by Evanston: "Unfortunately, these rulings were not entered until well over eight years after the underlying cancellation and claims were made, six years after the DeLoreys filed their claims against Evanston, and two years after Evanston settled with the DeLoreys." (Id. at 20). The passage of time during the State Court's consideration of the parties' motions for summary judgment is not a proper basis for calling upon PAC to answer for Evanston's debt. Nor can Evanston reasonably attribute any delay in these

28

proceedings to PAC. It was Evanston that dismissed its State Court action against PAC on the eve of trial after years of litigation, only to re-file in this Court eight months later.

## III.  Conclusion

Evanston failed to carry its burden of proof on elements three and five of its equitable subrogation claim. PAC is thus entitled to a judgment in its favor as to Evanston's equitable subrogation claim.

As all of Evanston's claims in this action have been withdrawn or decided against Evanston, the Court directs the Clerk to enter a final judgment in favor of PAC. In the instance that PAC intends to file any motions for fees or costs, such motions must be filed by April 15, 2013. The Clerk is directed to terminate all pending motions and to close this case.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

1. The Court directs the Clerk to enter final judgment in favor of PAC and against Evanston.

2. In the instance that PAC intends to file any motions for fees or costs, such motions must be filed by **April 15, 2013.**

3.    The Clerk is directed to terminate all pending motions

and to **close this case**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this

<u>26th</u> day of March, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies furnished to: All Counsel of Record